Thomas S. Agkesta, J.
This is an action for divorce based on a prior judgment of separation brought by the husband. After hearing proof of the allegations in the complaint, the court directed that judgment be granted in favor of the plaintiff and reserved decision on alimony and counsel fees.
The husband is 57 years of age and the wife is 45. The duration of the marriage was eight years and there were no issue but the wife has a 19-year-old son by a previous marriage. Both the plaintiff and defendant are healthy and capable of work. The husband is employed as an accountant and earned between $11,000 and $14,000 in 1969. The wife is an experienced legal secretary. In her memorandum of law she admits that she earned $8,840 in 1969.
Section 236 of the Domestic Relations Law provides, in part, that in an action for divorce “ the court may direct the husband to provide suitably for the support of the wife as, in the court’s discretion, justice requires, having regard to the length of time of the marriage, the ability of the wife to be self supporting, the circumstances of the case and of the respective parties ”. It is and has been the abiding interest of the State to preserve the family and maintain it as a self-sufficient, independent unit. Even when the familial entity has been destroyed, the State maintains its interest so as to insure the members of the family are maintained and that the individuals involved are not “ destroyed by crushing economic and psychological pressures ”. (Phillips v. Phillips, 1 A D 2d 393, 397.)
Our society, and the law along with it, is increasingly moving away from the theory that marriage is an institution with important economic functions and is viewing it more and more as a partnership between congenial persons of the opposite sex, with both parties on economic parity. Thus, a wife may now hold property independently of her husband; she may enter into contractual negotiations independently of him; she may enter into contracts directly with him; she may sue and be sued by him in matters not directly touching the marriage contract; she may vote independently of him; she may carry on business independently of him; she may travel independently of him; she is entitled to equal employment opportunities and she may not be discriminated against in regards to wages; and she may sue for divorce.
*261 Because of this position of equality in marriage, the courts are faced with the problem of the economic consequences arising out of the marital dissolution. The problem is not acute where the husband and wife have been married for a long period of time and the wife has given herself solely to the task of being homemaker and mother without having the opportunity nor the inclination to seek employment or learn the skills of the marketplace. In such cases, the courts have placed the onus upon the husband to provide his former wife with sufficient means to maintain the standard of living she enjoyed while married, consonant with her husband’s means and her own financial circumstances.
However, the problem arises where there are no children of tender years and both husband and wife have been working during the marriage or where the wife acquired a skill prior to marriage which has not diminished in its economic value and she is able to assume a position in business or the professions after the termination of the marriage. In such cases, should the wife receive alimony? It must be remembered that “ alimony was not designed to confer upon a woman of independent means or capacities a status of leisure and uselessness in society. The married woman, separated from her husband, should be encouraged, if consistent with her capacities and obligations to her children and family, to devote her energies to their full reach and make herself economically useful.” (Brownstein v. Brownstein, 25 A D 2d 205, 209.) In 1968 approximately 36% of the total work force in the United States were women. It can be truly said of a wife in today’s world that “ From her old position as an identity merged in him and not separable from him, she has advanced to a position of independence in most respects fully equal to his.” (The Changing Social Setting of Alimony Law, 6 Law and Contemporary Problems, pp. 186, 192.) Since women in today’s society are “ in most respects fully equal ” to that of men, they must, wherever possible, share the economic burden of a dissolved marriage. The fact that the parties were once married should not entitle the former wife to a lifetime annuity, where no need is shown.
Further, alimony may be psychologically harmful to both parties as it “ perpetuates * * * a relationship passionately undesired and in a way that continues and even increases former antagonisms ”. (Social and Psychological Effects of the Availability and the Granting of Alimony on the Spouses, 6 Law and Contemporary Problems, p. 283.) Alimony has the effect of hindering a woman from putting herself in a position where she would be induced to reorganize her life on a new and *262 better basis. She does not work and develops no talents. She can neither reject the past, accept the present, nor anticipate the future —1 ‘ wandering between two worlds one already dead the other powerless to be born”. (Doyle v. Doyle, 5 Misc 2d 4, 7.) At the same time that the wife is in this netherworld, the former husband is unable to make feasible plans for his financial or social future as the obligations to his former wife sway above him like a sword of Damocles.
The element of fault should play no part in the award of alimony as it has no place in our current social thinking in regard to marital relations. The modern view of fault in regard to domestic problems was expressed by Mr. Justice Hofstadter in Doyle v. Doyle (supra, p. 6) where he stated: “ Generally, family break-ups are not due to specific acts of either spouse, legal fictions notwithstanding. They result rather from a general malaise to which both have contributed. Fault usually comes after malaise has set in; it is the symptom not the cause of domestic discord.” This philosophy has found expression in the 1966 change of the Domestic Relations Law (Domestic Relations Law, § 170) which has broadened the grounds for divorce from the sole ground of adultery to five other grounds, including two nonfault grounds. (Domestic Relations Law, § 170, subds. [5] and [6]; see Gleason v. Gleason, 26 N Y 2d 28.) In the words of the Joint Legislative Committee on Matrimonial and Family Laws, “ The time has come to recognize grounds for divorce not so much as penalties for culpable behavior of husbands and wives, but as manifestations of dead marriages, marriages that should be terminated for the mutual protection and well being of the parties, and, in most instances, of their children.” (1966 Report of Joint Legis. Committee on Matrimonial and Family Laws; N. Y. Legis. Doc., 1966, No. 8, p. 85.) Since the emphasis on the doctrine of fault has been eroded in the granting of divorce so, too, should the fault doctrine be dispensed with in the granting of alimony.
Returning to the facts of the case at bar, the court is confronted with a situation where the husband and wife are almost on economic parity; where there are no children of tender years to be considered; where both parties are healthy and have the skill and ability to work; where the marriage has lasted but eight tempestuous years; where there is no doubt that the marriage is, in fact, dead. Should alimony be granted in such a situation? In the considered judgment of this court, and for the reasons stated previously, it should not, for to do so would add one more ‘ ‘ alimony drone ’ ’ to the ever-increasing roll of *263 divorced women in this State and Nation. (Doyle v. Doyle, 5 Misc 2d 4, supra.) Accordingly, alimony is denied. Counsel fees in the sum of $500 are awarded the defendant.